

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

RUBEN S. CORTINA et al.    )
           )
   Plaintiffs,    )
           )
   v.        )  CASE NO.: 06-CV-6850
           )
HOTEL and RESTAURANT EMPLOYEES )
UNION, LOCAL 1 and    )
CITY FRONT HOTEL ASSOCIATES  )
LIMITED PARTNERSHIP d/b/a THE  )
SHERATON HOTEL AND TOWERS,  )
           )
   Defendants.   )

## MEMORANDUM OPINION AND ORDER

On December 12, 2007, Plaintiffs filed a complaint against the Defendants, alleging two counts under sections 7 and 9 of the National Labor Relations Acts ("NLRA"), 29 U.S.C. § 151 et seq. and section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185 et seq. and two counts for breach of contract which they assert lie within the Court's supplemental jurisdiction. Plaintiffs' claims include allegations in Counts I and II that each Defendant individually breached a duty of fair representation owed to the Plaintiffs and allegations in Counts III and IV that each Defendant individually breached a collective bargaining agreement governing the parties from September 1, 2002 to August 31, 2006.

This matter is before the Court on two motions to dismiss: (1) a Motion to Dismiss Counts I and III (DE 15) filed on March 9, 2007 by Defendant Unite Here Local 1 (identified in the Complaint as Hotel and Restaurant Employees Union, Local 1) (the "Defendant Union"), and (2) a Motion to Dismiss Counts II and IV (DE 17) filed on March 9, 2007 by Defendant City Front Hotel Associates Limited Partnership d/b/a The Sheraton Hotel and Towers (the "Defendant Hotel").

Both motions are brought pursuant to Fed. R. Civ. P. 12(b)(6) for failure to a state claim upon which relief can be granted. For the following reasons, the Court GRANTS Defendant Union's Motion to Dismiss Counts I and III (DE 15) and GRANTS Defendant Hotel's Motion to Dismiss Counts II and IV (DE 17).

## I.    Standard of Review

A motion to dismiss tests the sufficiency of a complaint, not the merits of a case. See *Autry v. Northwest Premium Servs., Inc.*, 144 F.3d 1037, 1039 (7th Cir. 1998). The Court must accept all well-pleaded factual allegations in the Complaint as true, drawing all reasonable inferences from those facts in Plaintiffs' favor. See *Cleveland v. Rotman*, 297 F.3d 569, 571 (7th Cir. 2002). Defendants' motions to dismiss should be granted only if Plaintiffs cannot prove any set of facts in support of their claims that would entitle them to relief. *Autry*, 144 F.3d at 1039 (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)).

## II.    Background

The following facts are assumed to be true for purposes of deciding the motions before this Court. At all times relevant to the allegations before the Court, Plaintiffs were members of the Union and were members of the bargaining unit covered by the collective bargaining agreement (the "CBA") governing the relationships between the parties from September 1, 2002 to August 31, 2006. The Defendant Union is the exclusive bargaining representative of the Defendant Hotel's employees, including the Plaintiffs. Plaintiffs are banquet servers at the Defendant Hotel. According to Plaintiffs, under the terms of the CBA, they were employed by the Hotel as "banquet steady servers," a specific category of employees defined by Section 56(c) of the CBA.[1]

---

[1] Typically the Court would be confined to the Complaint on a 12(b)(6) motion. See *Rosenblum v. Travelbyus.com*, 299 F.3d 657, 661 (7th Cir. 2002). Otherwise the 12(b)(6) motion should be treated as one for summary judgment and disposed of as provided in Fed. R. Civ. P. 56. See Fed. R. Civ.

Plaintiffs allege that, in violation of the terms of the CBA and in violation of a duty to fairly represent them, the Defendant Hotel created an "A List" and a "B List" of banquet steady servers and that the A List banquet steady servers receive a first call to work in advance of B List banquet steady servers. Plaintiffs further allege they were placed on the B List in violation of seniority provisions of the CBA.

Defendant Union attaches to its motion to dismiss (as Exhibit A) a letter dated April 24, 2001, which identifies the banquet steady servers placed on the B List.[2] The list makes clear that all Plaintiffs were considered B List banquet steady servers at least as of April 24, 2001. The April 24, 2001 letter notes that in the resolution of two previously filed grievances, B List employees would be considered banquet steady servers and would receive all of the benefits attendant to that

Pro. 12(b); *Venture Assoc. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993). However, Fed. R. Civ. P. 10(c) provides that "[a] copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes." From that rule, the Seventh Circuit has recognized that a narrow exception to the general prohibition against considering extraneous materials exists in ruling on a motion to dismiss. Specifically, the Seventh Circuit has held that "documents attached to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff[s'] complaint and are central to [their] claim." *Venture*, 987 F.2d at 431; see also *Wright v. Associated Ins. Cos. Inc.*, 29 F.3d 1244, 1248 (7th Cir. 1994). "The purpose of the exception is to prevent parties from surviving a motion to dismiss by artful pleading or by failing to attach relevant documents." *188 LLC v. Trinity Indus., Inc.*, 300 F.3d 730, 735 (7th Cir. 2002) (citations omitted). Under the exception, the Seventh Circuit has, on several occasions, affirmed the district court's consideration of extraneous materials not attached to a complaint where a claim arises from a contract or other written agreement between the parties. See *Venture*, 987 F.2d at 431-432; *Wright*, 29 F.3d at 1248. Here the CBA is at a minimum at the heart of two of the counts of the complaint before the Court, because Plaintiffs contend that both Defendants breached its terms and Plaintiffs expressly refer to the CBA in their Complaint. See Complaint ¶¶ 31-35. Notably, Plaintiffs have not contested the attachment of the CBA to the motions to dismiss by Defendants or challenged its authenticity. Nor have Plaintiffs contested Defendants' reliance on the terms of the CBA in support of their motions to dismiss. For all of these reasons, the Court considers the CBA at this stage of the case.

[2] As with the CBA, the Court considers the April 24, 2001 letter confirming Plaintiffs' status as "B List" employees because Plaintiffs refer to the B List in their Complaint and the B List is central to Plaintiffs' claims. See, *e.g.*, Complaint at ¶¶ 34-37. The creation and maintenance of the B List is the very conduct that Plaintiffs contend directly violates the CBA. Again, in their brief in opposition to Defendants' motions to dismiss, Plaintiffs have not contested Defendants' attachment of and reliance on the letter describing the B List, nor have Plaintiffs challenged its authenticity.

3

designation *other* than first call to work. This letter appears to have been written prior to the negotiation and execution of the CBA governing the parties between September 1, 2002 and August 31, 2006.

The Complaint alleges that certain Plaintiffs attempted to obtain redress from the alleged discriminatory practices which arose from the creation and implementation of the B List through "procedures set forth in the CBA." Complaint at ¶ 48. Plaintiffs do not, however, provide any further detail regarding their alleged grievances to either the Defendant Union or the Defendant Hotel. Plaintiffs further allege that those efforts were rebuffed by both Defendants and any further efforts toward a non-judicial resolution would be futile. Finally Plaintiffs contend that the breaches allegedly resulting from the creation of the B List began as of the date on which the List was established and continue each day for as long as the B List remains in effect.

In its motion to dismiss, Defendant Union contends that both claims against it, Count I for breach of duty of fair representation and Count III for breach of contract (the CBA), are time-barred under the six-month limitations period applicable to Section 301 labor claims, arguing that in fact the conduct at issue occurred more than five years before the filing of this suit on December 12, 2006. In addition to the limitations argument, Defendant Union further argues that Count III for breach of contract should be dismissed because (1) Plaintiffs' claim for breach of contract is really just a breach of duty of fair representation claim and (2) breach of contract claims by union members again a union based on a collective bargaining agreement are cognizable only where the relevant contract language specifically imposes a duty of the union, and no such duty exists in this case.

In its motion, Defendant Hotel first argues that Count II for breach of a duty of fair representation must be dismissed because no such claim is cognizable against an employer under

4

the LMRA or common law. Defendant Hotel raises a jurisdictional issue with respect to Count IV, contending that Plaintiffs improperly allege that this Court has pendent (supplemental) jurisdiction over a state law breach of contract claim, when in fact Count IV for breach of contract is part of a hybrid Section 301 claim that cannot be brought without a claim against the union for breach of a duty of fair representation. Defendant Hotel also contends that because hybrid Section 301/fair representation claims are governed by the six-month limitations period, Count IV is time-barred and must be dismissed.

## III. Analysis

### A. Jurisdiction

The Court agrees with Defendant Hotel that a threshold matter regarding jurisdiction over the breach of contract claims (Count III against the Union and Count IV against the Hotel) exists. Plaintiffs allege in their Complaint that Counts III and IV are properly before the Court under the doctrine of pendent (supplemental) jurisdiction because they are related to claims in Counts I and II that are governed by federal labor law. Complaint at 1. Both Counts III and IV allege that the Defendants, each in an individual capacity, breached the terms of the collective bargaining agreement. Complaint ¶¶ 85, 109. In cases where allegations are predicated on the breach of a collective bargaining agreement, state law is preempted and the claims are governed by the LMRA and federal labor law. See *In re Bentz Metal Products Co., Inc.*, 253 F.3d 283, 285-286 (7th Cir. 2004) ("Today, it is well-understood that a claim for breach of a collective bargaining agreement is preempted" and is to be governed by substantive federal law under section 301 of the LMRA) (citing *Teamsters v. Lucas Flour Co.*, 369 U.S. 95 (1962)).;1706;1706 Federal law under the LMRA

5

necessarily governs the Court's analysis of Counts III and IV because both counts allege a breach of the terms of the collective bargaining agreement.

## B. Counts I and IV—The Hybrid Section 301/Fair Representation Claims under the LMRA

Plaintiffs allege that as a result of the creation and maintenance of the "B List" of banquet servers, Defendant Union breached its duty of fair representation (Count I) and Defendant Hotel breached the collective bargaining agreement (Count IV). See Complaint, Count I ¶¶ 29, 34, 37 and Count IV ¶¶109, 111, 112. These two counts together constitute a hybrid claim under Section 301 of the LMRA and the Court will treat them as such. See *e.g., Beck v. Caterpillar, Inc.*, 50 F.3d 405, 406 (7th Cir. 2005). The two components of a hybrid Section 301/fair representation claim are interdependent. See *Metz v. Tootsie Roll Industries*, 715 F.2d 299, 301 (7th Cir. 1983); see also *Christiansen v. APV Crepaco, Inc.*, 178 F.3d 910, 913, n.2 (7th Cir. 1999) (citing *Metz* and further stating it is "well-settled" that an essential element of a Section 301 action is a showing that the union has breached its duty of representation, without which the breach of contract claim against the employer cannot survive); *Cleveland v. Porca Co.*, 38 F.3d 289, 297 (7th Cir. 1991) (finding that where plaintiffs failed to establish that the union breached its duty of fair representation, any allegations of breach of the collective bargaining agreement against the employer necessarily fail to state a claim under Section 301). In plain terms, the hybrid action brought by Plaintiffs in Counts I and IV consists of claims that (1) Defendant Hotel violated the CBA by creating and maintaining separate A and B Lists of banquet servers and (2) Defendant Union breached its duty to fairly represent Plaintiffs by acquiescing to the creation and maintenance of the A and B Lists in violation of the CBA.

6

While true that a complaint does not fail to state a claim simply because some defense is potentially available (see, *e.g.*, *U.S. Gypsum Co. v. Ind. Gas Co., Inc.*, 350 F.3d 623, 627 (7th Cir. 2003)), dismissal under Rule 12(b)(6) on the basis of an affirmative defense is appropriate where the plaintiff pleads himself or herself out court by "admitt[ing] all the ingredients of an impenetrable defense." *Xechem, Inc. v. Bristol-Myers Squibb Co.*, 372 F.3d 899, 901 (7th Cir. 2004). Here Defendant Union argues that because Plaintiffs admit that they were aware of the conduct that gave rise to their allegations prior to the six-month limitations period, absent application of the continuing violation theory, Plaintiffs have conceded that the hybrid Section 301/fair representation claims (Counts I and IV) are time-barred. See Defendant Union's Reply (DE 23) at 2. Defendant Hotel also argues that Plaintiffs concede that no alleged wrongful conduct by either Defendant Union or Defendant Hotel occurred within the six months immediately preceding the filing of the Complaint. See Defendant Hotel's Reply (DE 24) at 2.

It is well-settled that hybrid Section 301/fair representation claims under the LMRA are subject to a six-month limitations period. See *DelCostello v. Int'l Board of Teamsters*, 462 U.S. 151, 171-172 (1983). The six-month limitations period applies to all hybrid Section 301/fair representation claims, not just to claims based upon grievances processed through arbitration proceedings in which the individual employees contend their union failed to fairly represent them. See *Flores v. Levy Co.*, 757 F.2d 806, 808-809 (7th Cir. 1985) (noting that the Supreme Court in *DelCostello*, in deciding on the six-month limitations period, evidenced an intent to treat all hybrid Section 301/fair representation claims alike and that the Seventh Circuit has treated such claims accordingly) (citations omitted). The operative date for determining when the statute of limitations begins to run, sometimes referred to as the accrual date, is the date on which a final decision on a

plaintiff's grievance has been made or the time that the plaintiff discovers or should have discovered with the exercise of reasonable diligence that he or she had a potential claim against the union because no further action with respect to the potential grievance has been taken. See *Metz*, 715 F.2d at 304; *Richard v. Local 134, Int'l Brotherhood of Elec. Workers*, 790 F.2d 633, 636 (7th Cir. 1986); *Bonds v. Coca-Cola Co.*, 806 F.2d 1324, 1326 (7th Cir. 1986).

The underlying conduct that forms the basis for all of Plaintiffs' allegations in the Complaint of breach by Defendant Union can be reduced to the following: (1) the creation of the B List, to which Defendant Union agreed to on or before April 24, 2001, and (2) the maintenance of the B List, to which Defendant Union acquiesced while the operative CBA governed from September 2002 to August 2006. It appears uncontroverted that the B List was created and agreed to by the Defendant Hotel and the Defendant Union on or before April 24, 2001. Plaintiffs' allegations regarding the maintenance of the B List relate to their theory that the Defendant Union's acquiescence to the use of the B List constitutes a continuing violation of the Defendant Union's duty to fairly represent them. The question is whether Plaintiffs' allegations survive based on conduct that accrued within the six-month period prior to December 12, 2006 — in other words, do Plaintiffs allege any actionable conduct that occurred after June 12, 2006, and thus renders their claims timely?

In their Response to Defendants' motions to dismiss, Plaintiffs agree that the six-month limitations period applies to hybrid Section 301/fair representation claims[3] and that "they were aware of the wrongs alleged in the instant Complaint prior to June 12, 2006." Plaintiffs' Response (DE 22) at 3. Nevertheless, Plaintiffs contend that their claims are not time-barred because,

---

[3] Plaintiffs state that the hybrid Section 301/fair representation claims here consist of Count I—the breach of fair representation claim against the union, and Count II—the breach of fair representation against the Hotel. See Plaintiffs' Response at 3. That statement is incorrect and the Court, as noted above, treats Counts I and IV together as the proper hybrid Section 301/fair representation action.

according to Plaintiffs, Defendants actions "constitute continuing violations of the duties owed by Defendant[s] to the Plaintiffs." *Id.* Defendants counter that absent the continuing violation theory – which they believe Plaintiffs cannot satisfy – Plaintiffs' admission that they were aware of the conduct which gives rise to their allegations prior to the six-month statutory period effectively bars the hybrid Section 301/fair representation claims (Counts I and IV).

The Court agrees with Defendants. The Court considers Plaintiffs' statements in their response to Defendants' motion, as it is entitled to do. See *Thompson v. Illinois Dept. of Professional Regulation*, 300 F.3d 750, 753 (7th Cir. 2003) (citations omitted) (in ruling on a motion to dismiss, the court may consider "the complaint, any exhibits attached thereto, and supporting briefs"). Absent a finding that Plaintiffs meet the legal requirements to properly state a cause of action based on a continuing violation theory, Plaintiffs' hybrid Section 301/fair representation claims, set forth in Counts I and IV, clearly are time-barred. The alleged wrongful conduct at issue arose with the creation of the B List in April of 2001, more than five and a half years before Plaintiffs filed this lawsuit. The operative CBA governing the parties' conduct and whose terms Plaintiffs allege were breached by the creation of the B List went into effect in September 2002, more than four years prior to the filing of the suit. Although Plaintiffs contend, without citing to any dates or providing any detail, that they attempted to seek redress with Defendant Union for their grievances through the processes set forth in the CBA, they concede in their Response they were aware of the conduct upon which they base their allegations before June 12, 2006 — which was more than six months prior to filing suit on December 12, 2006. At a minimum, Plaintiffs knew that the Defendant Union would not defend them against the practice of calling B List banquet servers second to work, through pursuing grievances or otherwise, far more than six months before the filing

9

of the suit. Thus, absent a successful application of the continuing violation theory, Plaintiffs'

hybrid Section 301/fair representation claims are time-barred by Plaintiffs' own admission.

Plaintiffs' admission that they were aware of the alleged wrongful conduct more than six

months before filing of the suit is not the only grounds for dismissing Counts I and IV on

limitations grounds. Plaintiffs' allegations in the Complaint itself establish that these counts are

barred. See *Kathaur SDN BHD v. Sternberg*, 149 F.3d 659, 670 (7th Cir. 1998) ("If a 'plaintiff

pleads facts that show its suit [is] barred by a statute of limitations, it may plead itself out of court

under a Rule 12(b)(6) analysis.' *Whirlpool Fin. Corp. v. GN Holdings, Inc.*, 67 F.3d 605, 608 (7th

Cir. 1998).") The alleged wrongful conduct — the creation of the B List — began in April of 2001,

more than five years prior to the filing of this suit. See Complaint ¶¶ 36, 111. Accordingly,

Plaintiffs were on notice that they were placed on the B List as least as early as April of 2001, and

the alleged discriminatory conduct — the second call to work — presumably began following that

agreement between Defendant Hotel and Defendant Union. The CBA under which Plaintiffs' claim

arose was effective between September 1, 2002 and August 31, 2006. See Complaint ¶ 31. At a

minimum, Plaintiffs were on notice that the B List, created before the signing of the CBA, would

be maintained and that their status would not change when the CBA at issue became effective on

September 1, 2002. Plaintiffs allege they sought redress through the grievance procedures outlined

in the CBA.[4] See Complaint ¶¶ 38, 113. The operative CBA sets strict time parameters on the filing

---

[4] Union members normally must exhaust all grievance procedures under a collective bargaining
agreement before seeking judicial resolution of a labor dispute. See *Clayton v. Automobile Workers*,
451 U.S. 679, 692 (1981). Exhaustion requirements are not a bar to maintaining a suit if the plaintiff
properly shows that internal union procedures are inadequate to provide the plaintiff complete relief.
*Id.* at 693. Plaintiffs' allegations regarding its exhaustion of the grievance procedures under the CBA
are conclusory and offer little guidance to the Court on whether they have appropriately exhausted
their claims. However, Defendants do not raise failure to exhaust internal union remedies as grounds
for dismissal here, and because the Court finds dismissal on other grounds appropriate, it will not
address that issue.

and processing of employee grievances related to their employment. See CBA, Section 45, Adjustment of Grievances, at 28-29. Even if we assume in Plaintiffs' favor that they properly adhered to the grievance process set forth in the CBA and that the statute of limitations only began to accrue at some point after the completion of the grievance process, it could not have taken more than four years to run its course.

Therefore, the Court holds that even drawing all reasonable inferences in favor of Plaintiffs, Counts I and IV are time-barred because Plaintiffs discovered or with the exercise of reasonable diligence should have discovered before June 12, 2006 that their grievances were not being pursued by Defendant Union and that they therefore had a potential claim. See *Metz v. Tootsie Roll Indus., Inc.*, 715 F.2d 299, 304 (7th Cir. 1983) ("At some point prior to six months preceding the time this action was brought, the [union member], in the exercise of reasonable diligence, should have discovered the acts constituting the alleged violation."). Claimants may not rest on allegations of indeterminable periods of union inactivity in pursuing their grievances in order to avoid application of the statute of limitations in hybrid Section 301/fair representation actions. See *Pantoja v. Holland Motor Exp., Inc.*, 965 F.2d 323, 327 (7th Cir. 1992) ("Prolonged inaction is sufficient to give a diligent plaintiff notice that the union has breached its duty of fair representation."); see also *Christiansen*, 178 F.3d at 914-15 (rejecting a claimant's argument in opposition to a motion to dismiss that her claim did not accrue over a five-year period of inactivity because she had not been formally notified by the union that it failed to file her grievance). Strong federal policy favoring the prompt resolution of labor disputes supports adherence to and enforcement of the six-month limitations period. See *Metz*, 715 F.2d at 304 (citing *United Parcel Service, Inc. v. Mitchell*, 451 U.S. 56, 63 (1981)); see also *Flores v. Levy Co.*, 757 F.2d 806, 810 (7th Cir. 1985).

Plaintiffs' remaining basis for their hybrid Section 301/fair representation claims in Counts I and IV rests on a "continuing violation" theory. Plaintiffs allege that the implementation of the B List resulted in and continues to result in discrimination against Plaintiffs in contravention of the seniority provisions of the CBA because certain Plaintiffs have higher seniority than A List banquet servers called first to work. See Complaint ¶¶ 37, 112. Plaintiffs allege that as a result of their placement on the B List, each Plaintiff has suffered and continues to suffer economic damages because they are only given the opportunity to earn 50% of the earnings available to A List banquet servers. Complaint at ¶¶ 40, 115. Both Defendants argue that a continuing violation theory is inapplicable in this case because no alleged wrongful conduct occurred within the six-month limitations period.

In order to advance their claims under a continuing violation theory, Plaintiffs principally rely on the Seventh Circuit opinion issued in *Lewis v. Local Union 100*, 750 F.2d 1368 (7th Cir. 1984). Plaintiffs argue that the basis for the Seventh Circuit's finding that the *Lewis* plaintiff adequately pled a continuing violation rested on the fact that Lewis and his Union were in a "continuous relationship and that the Union had complete control over Lewis' employment," and that by virtue of that relationship the Union was able to perpetuate a continuing wrong sufficient to avoid the statute of limitations. Plaintiffs' Response at 4. Plaintiffs contend that here, too, both the Defendant Union and the Defendant Hotel have long-standing relationships with each of the Plaintiffs, Defendant Union is the exclusive bargaining representative of Plaintiffs, and Defendants collectively have "complete and absolute" control over the wages, hours and other terms and conditions of Plaintiffs' employment. *Id.* at 4-5. Plaintiffs further insist that the "continued viability of the continuing violation theory" has been recognized by federal courts, including the

12

Seventh Circuit, in hybrid Section 301/fair representation cases. *Id.* (citing *Adams v. Budd Co.*, 846 F.2d 428 (7th Cir. 1988)); see also *Dittman v. GMC*, 941 F. Supp. 284 (D. Conn. 1996); *Bassett v. Local Union No. 705, Int'l Brotherhood of Teamsters*, 125 L.R.R.M. (BNA) 3492 (N.D. Ill. 1987). Defendant Union counters that *Lewis* is inapposite because in that case the claimant's rights were actively violated during the six-month period statutory period as a result of the union's alleged affirmative refusal to refer the claimant out of a hiring hall for employment. Here, by contrast, Defendant Union argues that dismissal is appropriate because the alleged violation took place outside of the six-month statutory period and the union took no further action. Defendant Union Reply at 3 (citing *United Independent Flight Officers, Inc. v. United Air Lines, Inc.*, 756 F.2d 1262, 1273 (7th Cir. 1985)).

Assuming that Plaintiffs are correct that the Seventh Circuit and other federal courts continue to recognize the continuing violation theory, including in hybrid Section 301/fair representation cases, Plaintiffs have failed to allege a claim which falls within the parameters of that theory. In *Lewis*, the Seventh Circuit found the continuing violation theory applicable because the alleged wrongful action by the union — the refusal to refer Lewis out of the hiring hall to employers — constituted an ongoing pattern of discriminatory conduct and occurred on multiple occasions. *Lewis*, 750 F.2d at 1378. *Lewis* also recognized that a plaintiff must point to acts occurring within the six-month limitations period. *Id.* at 1379; see also *Christiansen*, 178 F.3d at 915; *Adams v. Budd Co.*, 846 F.2d 428.

Here, by contrast, Plaintiffs fail to raise in their Complaint any alleged violations that occurred within the six-month period prior to the filing of this suit that might support a continuing violation. At most, Plaintiffs claim a continuing loss of wages as a result of their placement on the

13

B List through time they filed suit. See Complaint ¶¶ 39-40, 114-115. But that assertion does not suffice, because the Seventh Circuit has made clear that "conduct within the six-month period which is only unlawful in light of conduct outside the period does not constitute a continuing violation which delays the statute of limitations." *Christiansen*, 178 F.3d at 915 (citations omitted). Here only one allegedly discriminatory act occurred that forms the basis for an action — the creation of the B List. The continued effects of the Plaintiffs' placement on the B List, such as the second call to work and the resulting lower wages, do not result in a new violation each time an A List banquet server is called ahead of one of the Plaintiffs to work by the Hotel, but are instead a result of being placed on the B List in the first place way back in 2001. *Id.* (finding that an employer's a failure to increase the plaintiff's pay based upon claims of qualifications allegedly attained in 1991 and which resulted in plaintiff's allegations that each pay period she should have been paid a higher wage did not constitute a continuing violation sufficient to delay the limitations period). Thus, as a matter of law Plaintiffs fail to state a continuing violation sufficient to delay the limitations period and Counts I and IV are time-barred.

C. Count III—Breach of Contract by Defendant Union

Plaintiffs allege in Count III of their Complaint that Defendant Union breached the terms of the CBA by agreeing to and permitting Defendant Hotel to establish and implement the A and B Lists of banquet steady servers. See Complaint ¶ 85. Defendant Union contends that Count III should be dismissed on several grounds. First, Defendant Union argues that Plaintiffs have failed to state a claim because Count III effectively constitutes a duty of fair representation claim and should be dismissed on the same grounds as Count I. Second, Defendant Union argues that a union member's breach of contract claim brought against a union based on a CBA is not cognizable under

14

federal law unless contract language in the CBA specifically imposes a duty on the union. Finally, Defendant Union asserts that even if a cognizable breach of contract claim against it exists, Count III is subject to the same statute of limitations as a hybrid Section 301/fair representation claim and is also time-barred.

Under the notice pleading standard prescribed by the Federal Rules, the Court is mindful that it must broadly construe Plaintiffs' Complaint in favor of stating a claim when considering a motion to dismiss. To that end, the Court recognizes the possibility that a union member may have standing to bring a breach of contract claim against a union so long as the union member also alleges that the union has breached its duty of fair representation. See *Lewis v. Local Union No. 100 of Laborers' Int'l Union of North America*, 750 F.2d 1368, 1374 (7th Cir. 1984) ("[T]here can be little doubt that an employee can maintain an action under section 301(a) against the union for breach of the labor contract, where, as here, the employee has also alleged a breach of the duty of fair representation."); see also *Hubert v. Board of Trustees of Community College Dist. No. 508*, 1999 WL 285927 at *9 (N.D. Ill. April 29, 1999) (recognizing that while a union member generally does not have standing to bring a breach of contract claim against its union, it may be able to do so in conjunction with an allegation that the union also breached its duty of fair representation).

However, in *Lewis* the Seventh Circuit also instructed that "individual employees may only sue under section 301(a) 'for breach of a promise embedded in the collective bargaining agreement that was intended to confer a benefit upon the individual [employee].'" *Lewis*, 750 F.2d at 1373 (quoting *Amalgamated Assoc. of Street, Electric Ry. & Motor Coach Employees v. Lockridge*, 403 U.S. 274, 298-99 (1971)). At the motion to dismiss stage in *Lewis*, the Seventh Circuit concluded that the plaintiff had stated a claim because there was no question that the hiring hall process

15

outlined in the collective bargaining agreement conferred benefits on individual employees, and that the union could be interfering with an individual right conferred upon Lewis when refusing to refer Lewis out of the hiring hall to employers. *Id.* at 1374. In effect, the Seventh Circuit suggested that the union might have a duty not to actively interfere with rights conferred upon its individual members under the collective bargaining agreement and that allegations that the union continually refused to refer Lewis out of the hiring hall were sufficient to state a claim. Based on that possibility, the Seventh Circuit found that the district court was too quick to dismiss the claimant's breach of contract claim against the union on the pleadings. *Id.* at 1374.

Applying the standard set forth in *Lewis* to the allegations of Plaintiffs' complaint, the Court concludes that Plaintiffs cannot state a claim for breach of contract against the Union under the plain terms of the CBA. Even if Plaintiffs have standing to raise a breach of contract claim against Defendant Union (see *Lewis*, 750 F.2d at 1374), standing to assert such a claim and the ability actually to state a cognizable claim for breach of the CBA are separate and distinct matters.

Plaintiffs rely specifically on Sections 4(g) and 56(c) of the CBA as the contractual basis for conferring individual rights upon the individual union members that the union allegedly breached. See Complaint at ¶¶ 83, 84. However, neither Section 4(g) nor Section 56(c) of the CBA "confer a benefit" on individual union members that gives rise to a duty on the part of Defendant Union. Section 4(g) describes *the Hotel's* right to maintain "a list of banquet steady servers" and a "supplementary listing of regularly assigned extra banquet employees."[5] CBA at 4. Thus any

---

[5] Section 4(g) of the CBA states in relevant part:

Each Hotel, if it so desires, may maintain a list of banquet steady servers. A banquet steady server is defined as a banquet employee on the regular payroll for whom Health and Welfare, Pension, Dental, and Legal Plan Fund contributions are made monthly, who receives vacations as defined in the basic Labor Agreement for regular employees, and for whom Union initiation fees and dues will be checked off in the future.

16

corresponding duties related to those lists fall to Defendant Hotel. The only potential contractual

duty placed upon *Defendant Union* in Section 4(g) is a promise that "no preferred list of extras" be

kept on record at the local union office. CBA, Section 4(g), at 5. Plaintiffs allege in the Complaint,

however, that they were, at all times relevant, classified as "banquet steady servers" as defined by

Section 56(c), not "extras." See Complaint at ¶ 84. "Banquet steady servers" and "extras" are

treated differently under the terms of the CBA and thus Plaintiffs have no basis to allege breach

under Section 4(g). Section 56(c) similarly confers no benefit to individual employees that gives

rise to a basis for alleging a breach of a contractual duty on the part of the union. Section 56(c)

defines a "banquet steady server." CBA, Section 56(c), at 38. Section 56(c) sets forth the general

requirements for contributions to union pension funds by banquet steady servers and the rights of

banquet steady servers when working holidays.[6] *Id.* Like Section 4(g), Section 56(c) does not

---

> In addition, each Hotel shall have the right to maintain a supplementary listing of regularly assigned extra banquet employees for that Hotel.
>
> All other banquet employees will be defined as extras and must be secured from the Local Union Office as needed by the Hotel provided that the Union is able to furnish same. If the Union is unable to furnish extra banquet employees satisfactory to the Hotel, the Hotel shall have the right to secure the additional members requirement from any available source at the prevailing wage rates herein specified.
>
> \*\*\*
>
> There shall be no preferred list of extras on record in the Local Union Office from any Hotel.

CBA, Section 4 Employee Hiring, at 4-5.

[6] Section 56(c) of the CBA states:

> Banquet Steady Server. An employee hired in the Banquet Department as a regular employee but who is paid wages according to the Function Rate for work performed.
>
> Contributions to the Hotel Employees, Restaurant Employees International Health and Welfare Fund and Pension Fund are to be made at currently month rates.
>
> Banquet steady employees are not entitled to any paid holidays if the holiday is not worked.

confer a benefit to individual employees that Defendant Union is obligated to provide or is owed by Defendant Union to Plaintiffs. Instead, Section 56(c) outlines certain duties of the Hotel owed to the banquet steady servers, namely vacation pay, and separately, certain contribution obligations owed by banquet steady servers *to the union.*

Finally, Plaintiffs contend that the creation of the B List violates seniority provisions of the CBA. *See* Complaint at ¶ 88. Plaintiffs omit any reference to the specific seniority provisions in the CBA that they allege Defendant Union has breached. However, the seniority lists are maintained by Defendant Hotel, not Defendant Union.[7] *See* CBA, Sections 41(C) and (D), at 25.

---

> If any of the regular employees' paid holidays are worked by a banquet steady employee, the employee receives twice the Function Rate.

> Banquet steady employees shall be subject to the dues check-off procedure and deductions for dues, fees, and assessments shall be made monthly and forwarded to the Union within the appropriate time limits.

> Whenever the Employer changes the status of a banquet employee from extra to Banquet steady the Employer shall notify the Union within seven (7) days.

CBA, Section 56, Definitions, at 38.

[7] Section 41(C), Seniority, states:

> Seniority shall be determined by the length of the employee's service since the last date of hiring. The length of an employee's service is determined by his continuous service with the Employer, composed of the time actually spent on the payroll plus time lost when an employee for less than six (6) months at any time is either sick, injured, pregnant, or laid off due to curtailment of operations plus time spent in the armed forces of the United States of America or any other absence approved by the Employer.

Section 41(D), Seniority Lists, states:

> The Union, upon request and reasonable notice, will be tendered an up-to-date seniority list from the Employer. Such list shall include the date of hire, the most current promotion or transfer, and classification.

CBA, Section 41, Layoffs, Reduction in Force and Probationary Period, at 25-26.

Thus, by its terms any duties with respect to the seniority provisions must be discharged by Defendant Hotel, not Defendant Union.

Simply put, Plaintiffs cannot point to any provision of the CBA that confers a benefit on individual employees and gives rise to a contractual obligation by Defendant Union that could have been breached by Defendant Union's acquiescence in the creation and maintenance of the A and B Lists of banquet servers *by Defendant Hotel*. Unlike the factual allegations in *Lewis*, where the plaintiff contended that the union took affirmative steps to interfere with rights conferred under the collective bargaining agreement, here Plaintiffs' argument here is that Defendant Union did nothing while Defendant Hotel created a list which Plaintiffs allege resulted in discriminatory practices in violation of the CBA. While Defendant Union's acquiescence may have resulted in allegations that certain employees were treated unfairly in contravention to Defendant Union's duty to fairly represent all of its members, this alleged wrongful conduct is remedied, if at all, by a claim for breach of the union's duty to fairly represent its members, not by a separate claim for breach of contract against Defendant Union. See, *e.g.*, *Ramos v. Chicago Sun-Times*, 1997 WL 545349, at *2 (N.D. Ill. Aug. 29, 1997) (finding that the plaintiff failed to state a claim for breach of the collective bargaining agreement where a common sense reading of the factual allegations only supported a claim for breach of the duty of fair representation against the union).

Alternatively, even if Plaintiffs had properly stated a claim for breach of the CBA, Count III would be barred under the same six-month limitations period applicable to hybrid Section 301/fair representation suits. Although the mandate is less explicit than it is with respect to the more common hybrid Section 301/fair representation claims, it is clear that the Seventh Circuit contemplates application of the six-month limitations period to a breach of contract claim against

19

a union based on a collective bargaining agreement against a union alongside a pure or hybrid Section 301 action based upon a breach of the duty of fair representation. See *Lewis,* 750 F.2d at 1377-1378 (noting that the parties and the Court agreed that the proper limitations period applicable to both the duty of fair representation claim and the breach of contract claim against the union was six months). And Plaintiffs do not contend otherwise. For the reasons stated above in the discussion of the dismissal of Counts I and IV — namely, that no actionable conduct occurred in the six months prior to the filing of this suit and that the continuing violation theory does not apply in the facts of this case — Count III also fails to survive the limitations period.

### D. Count II—Breach of Duty of Fair Representation by Defendant Hotel

Finally, Plaintiffs allege in Count II of the Complaint that Defendant Hotel breached a duty to fairly represent Plaintiffs. However, no such claim against an employer is recognized under the LMRA. Defendant Hotel correctly articulates that the fundamental nature of the relationship between Defendant Union and Plaintiffs gives rise to a *union's* duty to fair represent its members. A union acts as the exclusive bargaining representative with the employer for its members' wages, pay rates, hours, and other conditions of employment. See 29 U.S.C. § 159(a). As a result of its status as the exclusive bargaining representative, the union is vested with the duty to fairly represent its members and a failure to do so constitutes an unfair labor practice under the NLRA. See 29 U.S.C. § 158(b); *Daniel v. Pipefitter's Ass'n Local Union No. 597,* 945 F.2d 906, 920 (7th Cir. 1991). The duty was judicially created under federal common law and, as more fully articulated by the Supreme Court in *Vaca v. Sipes*, includes "the statutory obligation to serve the interest of all members [of the collective bargaining unit] without hostility of discrimination toward any, to exercise its discretion with complete good faith and honesty, and to avoid arbitrary

20

conduct." *Vaca v. Sipes*, 386 U.S. 171, 177 (1967); see also *Daniel*, 945 F.2d at 920 (quoting *Vaca*). Thus, arbitrary, discriminatory, or bad faith conduct by a labor union may constitute a violation of the duty of fair representation. See *Vaca*, 386 U.S. at 190. No analogous duty of fair representation exists for an employer, because an employer is not the exclusive representative of the union members whom it employs. In fact, the interests of an employer in the bargaining and maintenance of a collective bargaining agreement often are at odds with those of its employees. Plaintiffs fail to raise any authority supporting their claim in Count II against Defendant Hotel. Therefore, Count II fails to state a claim and must be dismissed.

## IV. Conclusion

For the reasons set forth above, Defendant Union's motion to dismiss Counts I and III (DE 15) is granted. Defendant Hotel's motion to dismiss Counts II and IV (DE 17) is granted. Accordingly, Plaintiffs' Complaint in its entirety is dismissed in its entirety.

Dated: March 31, 2008

Robert M. Dow, Jr.
United States District Court

21